Mr. Whitney, whenever you're ready. Good morning. Good morning. Daniel Whitney on behalf of the appellants Christine and Anwar Seney along with their two children. This case involves Rent-a-Center's binding arbitration contract. Appellants contend that the Magnuson-Mollis Warranty Act, read together with FTC's gap-filling legislative regulations, prohibit binding arbitration, and therefore the Federal Arbitration Act does not apply. The Federal Arbitration Act, FAA for short, was enacted in 1925 and signed into law by President Calvin Coolidge. This was long before anyone ever conceived of the notion of consumer protection. In fact, it was during a day when the Model T4 was still in production. Magnuson-Mollis was enacted against the backdrop of Supreme Court decisions some 50 years later. That case law, until 1985, had refused to hold an arbitration provision could trump a statutory right to file suit. The FTC legislative rules, promulgated in 1975, prohibit pre-dispute binding arbitration provisions that purport to waive a consumer's right to go to court. And it's been consistently interpreted by the FTC over the past 38 years. With full acknowledgment of the purpose of the Federal Arbitration Act to assure enforcement of arbitration agreements, and in light of the liberal federal policy favoring arbitration, the Court's ruling in this case must not be based on judicial hostility to arbitration agreements, but rather on interpretation of the Magnuson-Mollis Act, its language, legislative history, and purpose, together with the FTC gap-filling legislative regulations, pursuant to a very broad delegation of authority to the FTC, as well as looking at the actual binding arbitration agreement at issue in this case. FTC regulations. Under the Supreme Court's opinion in the American Express v. McMahon, it laid out a specific test. Yes. If that test isn't met, do you get to any issue of FTC agency regulation? If the Court finds that the language of the statute clearly speaks to the issue and is not silent on the question of whether binding arbitration is permitted, then you don't get to any further interpretation. But Chevron says that if the statute is silent or ambiguous, then you do look to see what the agency has done in construing and actually promulgating legislative rules and interpreting those rules pursuant to the statute. Let me ask you this. Today we use the phrase alternative dispute resolution, ADR. Yes. And I think that clearly includes mediation and arbitration. Yes. This was back in 1975. Yes. I don't think that phrase was in use then. That's the year I finished law school, and I don't remember it being used. But the statute here talks about informal dispute settlement mechanisms, and in the next section, informal dispute settlement procedures. Yes. So the question is, did Congress mean to include arbitration when it used that phrase? Well, the use of the general phrase, the broad phrase, informal dispute settlement procedures, as it appears in Section 2302A8 and 2310A, the phrase any informal dispute settlement procedure, 2310A2, is broad enough to include arbitration. Even though binding arbitration is not a term defined in Section 2301 in the definitions, there's 15 definitions, but that is a very broad term, and arbitration in essence is resolving disputes on an informal basis. One of the very consistent themes in Supreme Court decisions. Why do you say that? I'm sorry? Why do you say that? About the informality of arbitration in resolving disputes? There are a lot of cases that simply look at arbitration now as a choice of forum. Well, but the question is whether, when you're looking at the statutory language, whether it fits within the phrase of the informal dispute settlement procedure, which I believe it is a broad enough phrase to encompass arbitration. So that's the first step. But even if the court were to find that it's not clear or silent as to whether it did actually include binding arbitration, that's when you look to see what the FTC says. When the FTC was given broad rulemaking power to establish the terms and conditions of warranties, and in Section 310A2 states, the commission shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure. Can I ask you about the regulation and just for a moment talk about its ban on arbitration? So you have in the regulation decisions of the mechanism shall not be legally binding on any person. That's what you're relying on, right? Yes. Okay. And then the FTC defines mechanism as an informal dispute settlement procedure, which is incorporated into the terms of the written warranty. Correct. Correct? And a written warranty is a promise made in connection with the sale of a consumer good. Okay. There was no sale here, was there? This question about the nature of the contract, it is a rent-to-own agreement. So if the consumer decides— Did she ever exercise the option to own? I thought in a very short period of the rental, it was returned. If you continue to pay the rental payments, you acquire ownership of the property. But you don't have any authority that such a contract where the option to own is at play constitutes a contract, a written warranty for the sale. There's no sale. The question about the scope of the Magnuson-Moss, this has not been raised as a point— Not exactly. You all have kind of danced around. But there is case law on this point recognizing that this kind of an arrangement is with the Magnuson-Moss. And the broad— I would be interested in one in which the option to buy was never exercised. And they say that the contract— Indeed, the rental was for an extremely short period. Well, that's because— I read the facts here. Your Honor, it was for a short period because it was— They stopped paying for it because it was taken away due to the fact that it was infested with bed bugs. So if they had continued to pay on it, they would have— Right. All the more reason why it wasn't a sale. No, but that's the whole point, Your Honor. The nature of the agreement is that— If the consumer had continued to pay on it, the consumer would have owned the good. And certainly within the scope— They would have owned it or they would have had the option to own it. Well, it says that essentially if you—there's no ownership until total paid. It's in paragraph 7 of the agreement. And it says you will not acquire ownership until you pay the total rental payments necessary to acquire ownership or you can exercise an early purchase option. So it is something that is within the purpose of Magnus Maas to protect consumers who are acquiring goods. And it's something that if you look at the language of the purpose of the Magnus Maas Act in Section 2302, it has to do with improving the adequacy of information available to consumers in this context of marketing of consumer products. And certainly this is a marketing of a consumer product. Well, the regulations upon which you rely, I mean, they're the heart and soul of your case. One of the regulations that would be relevant here provides that a written warranty is a written affirmation made in connection with the sale of a consumer product by a supplier to a buyer. And the other one talks about an undertaking in connection with the sale of a consumer product, which becomes part of the basis of the bargain between a supplier and a buyer. Yes. So each one of them talk about a buyer. And the case that I have found that seems to address this is a Seventh Circuit case, which said that a plaintiff could not claim to be a buyer because title had not passed to him under the Magnus Maas Act. He had an option to purchase, but without exercising the option, he remained a holder of an option, not a buyer. Now, you say that there is a wealth of case law the other way? There is case law that recognizes this kind of an arrangement. Well, I would be interested, perhaps within a week, you could file just, and the other side can certainly file whatever authority they can find on that process, because this avoids us trying to piece together which of the two federal policies we're going to, which takes precedence over the other. If, in fact, the agreement that Ms. Sinney filed is not covered by the Magnus Maas Act at all, since it was a rental agreement. I will certainly supply the Court with those cases I came across, but did not brief since it wasn't raised in the case, but it certainly . . . You do recognize we can affirm on any basis, right? Absolutely. Yeah. Okay. Yeah. So, getting back to, if it is assumed for the purposes of argument, that the goods that were in this contract within the scope of the Magnus and Maas, the . . . Why don't we run through the McMahon test, and you tell us where in the text of the statute, the Magnus and Maas Act, do you say it eliminates the use of arbitration, and why that's not covered as an informal dispute resolution mechanism? Well, it's the binding aspect of it that's the problem. Arbitration itself is within the contention of the appellants, is that arbitration is within the scope of informal dispute settlement procedures. The point is, the question about whether the right to go to court can be waived. And so, the language that implies this right to go to court is in Section 2310A3C. There are lots of statutes that have similar provisions in them, and the Supreme Court has said on more than one occasion that that's not enough. That's correct, Your Honor. But then, if you go back to the context of 1975 when the FTC is promulgating its rules, it's against the backdrop of the controlling precedent in Wilco v. Swan that a party cannot validly waive the right to select a judicial forum. And that was good law for 36 years. It wasn't overruled until the 1989 decision in Rodriguez, which was a 5-4 split decision. And the most that can be said in Rodriguez is that it determined its earlier ruling was unwise, but certainly not arbitrary and capricious. And likewise, the most Bennett Center can say with 20's hindsight is that the FTC's interpretation in 1975 and going forward to the present was unwise, but certainly not arbitrary and capricious. And if it's simply unwise, Chevron says the court must defer. But then there's another case that the court should take a look at. Given the reasoning of sheer . . . It seems like your analysis of McMahon is dependent on a contemporaneous Chevron analysis. That was my initial question. McMahon seems to set forth, arguably, a separate test that says, okay, it's your burden if you want to preclude arbitration. In order to do that, you have to show that there's a statutory text that shows a contrary congressional command. You have to show that you can . . . If that's not effective, then you have to show that the legislative history identifies that. Or failing both of those, you have to show an inherent conflict between arbitration and the purpose of the statute that you don't wish to apply it to. I guess my fundamental question is, if you fail under that, would we ever get to Chevron? The way I read Chevron is that whenever you have . . . To reconcile the two cases, Chevron says that when you're dealing with a statute that has been interpreted by an agency that was given legislative power to essentially legislate rules, that you can't ignore what the agency has done pursuant to its legislative function. I guess your position has to rest on McMahon saying that there's a rebuttable presumption in favor of arbitration, and that you would say the Magnuson-Moss Act provides a command instructing the FTC to promulgate regulations for informal dispute settlement procedures. That's in the statute, and therefore the regulations follow from that. I think it's a very close question, which federal statute governs here. There are very strong . . . Which principle, because we have on one hand our deference to, long-time deference to arbitration, and then we have this pretty long-time Magnuson-Moss . . . Since 1975. . . . regulation that has been on the books. That's correct. No court intelligence. Anyway, go ahead. Well, I was getting back to some of the Supreme Court cases that bear on this, and whether a statutory right to a cause of action can be waived by an arbitration agreement. One of the reasons why the court in Shearson v. McMahon said that there could be a waiver was because arbitration in that case involved interpretation of the Securities Exchange Act of 1934. It was based upon . . . Your time has expired. You can go into your rebuttal, but you can't leave. I'll just finish that thought. It was based upon the Commission's oversight of arbitration provisions, and here, in contrast, Renner Center is contending that its binding arbitration is not subject to the FTC's oversight. Thank you. I'll continue. Thank you. May it please the Court. My name is Jim Meaghan. I represent Renner Center, Incorporated, and Renner Center East, Incorporated, in this matter. Starting out, I think it's very important to understand that binding arbitration and informal dispute settlement mechanisms are completely two separate and distinct things. Binding arbitration, by definition . . . Why don't we go with the threshold question that Judge Moss raised. Your client is in the business of renting things to people, so it would seem like it would not be an uncommon occurrence for a claim such as this to have arisen. Under your rental agreements, are they within the scope of the Magus and Moss Act? Your Honor, we would say no because . . . Why didn't you say it in your papers then? Well, the point . . . It would be a fairly fundamental point of starting for a defense for somebody who's in your client's business. The point is, nowhere in the rental agreement is there, in and of itself, a warranty, other than the agreement to pass on . . . If you were actually selling it, there are two things that constitute the warranty provision. You keep telling us that they can't recover under one, and they keep saying, we're going under this other one. If, in fact, you were the seller, there's case law that makes it clear that that is a use warranty. You don't call it a warranty, but that's what you're guaranteeing, if you're the seller to a buyer. If we're the seller to the buyer, then certainly it would most likely be covered under the Magus and Moss Warranty Act. But in this situation, as the Court properly pointed out at the beginning of the appellant's argument, is that at no time was there the sale of the merchandise. It was returned within just a few days after the rental, and there was no purchase. Your colleague says there's a wealth of authority rejecting that theory. In a week, if maybe you can just . . . I don't want anybody to brief it. I just want somebody to send me this wealth of authority one way or the other. I'd be interested in seeing that wealth of authority, too, because I haven't found it. You're going to research and find, too, any cases that support the position you're now embracing. Absolutely. Okay. I want you both to send me all the cases you have on either side. That's your obligation to the Court here. We'll be happy to, yes. But getting back to, really, the ontological issue with what an informal dispute settlement mechanism is and what binding arbitration is, it's important to note that they are completely different things. Binding arbitration can never be an informal dispute settlement mechanism, which is why the FDC said that in its rulemaking that binding arbitration could not be a mechanism. Binding arbitration, by its very nature, is formal. It is an alternative forum, not necessarily a separate form of dispute resolution. Well, it's not a trial. It's not a trial. They have no federal rules of civil procedure that are governing it, or state rules of civil procedure, so that it is less formal than a trial . . . The Court is absolutely correct. . . . and more formal than negotiations. Absolutely. So it's somewhere in between. So saying it's radically different, it's more radically different from a trial than it is from informal procedures, arguably. But what makes it less like the informal settlement dispute mechanism is that it is binding, it is appealable to district court, and then, under the FAA, appealable to the Court of Appeals. So whereas the informal dispute settlement mechanism, which is completely voluntary, if you don't like the decision . . . Well, it's not . . . it kind of depends on what your arbitration agreement is. You don't necessarily have a right of appeal de novo from arbitrations. There are lots of arbitration agreements that severely restrict what someone could do, if they're dissatisfied with the arbitrator's result. Well, that's . . . There's a wealth of law, a lot of it in this circuit, that says that what we do is to defer to the arbitrator, if the award is in the ballpark, not correct, but generally dealing with what the contract says. Absolutely. But under the FAA, you know, contrary to language in the contract otherwise, it is appealable to the district court and potentially appealable to the Court of Appeals after that, if you don't like the decision. They're not . . . under the Federal Arbitration Act? No, no, no, no. It's appealable. You go in and you ask for the arbitration award to be either confirmed or not. Isn't that correct? I defer to my colleague on the district court. Well, right, and they can . . . Well, that's not . . . They can agree with it or not. I mean, so at least there's some . . . Affirmed is different than affirmed or reversed. That's fair, and perhaps I misrepresented that. The arbitrator can be . . . his rationale can be usually his, can be absolutely wrong. Right. But I guess the point . . . And it still is confirmed. I guess the point I'm trying to make is the informal settlement dispute mechanism, there's no review after that. You either . . . it's voluntary, you either . . . That has to be your point because obviously arbitration fits into some ground between a formal trial and the informal dispute mechanism, and it can be very much a moving target there. Well, that's correct. And under the Magnuson-Moss Warranty Act, it's completely voluntary. So the warrantor has . . . I mean, the warrantor can agree to set up an informal dispute settlement mechanism, either on its own or through a separate entity, and there are specific rules for doing that. Is the binding part of . . . is the main thrust of the argument that what you have is distinguishable from the Magnuson-Moss Act because nothing there would be binding if you do one of these mechanisms. Absolutely. Whereas in arbitration, the parties agree it is binding. That's correct. And if there is no provision in the sales contract for an informal dispute settlement mechanism, then there's really nothing that precludes, as a non-informal dispute settlement mechanism, there's nothing that precludes binding arbitration. And in fact, the rulemaking decisions of the FTC actually say that. And if I may please quote to the court, 40 Register 60211, the FTC writes, others suggested that in some cases the warrantor and the consumer might want to agree to use a remedy such as binding arbitration instead of proceeding to the mechanism. Again, nothing in the rule precludes the parties from agreeing to use some avenue of redress other than the mechanism if they feel it is more appropriate. However, once the consumer or the warrantor notifies the mechanism of the dispute, the mechanism is required by Section 703D to proceed to a decision within the specified time limits. How about reading the sentence before the one you began, others? However, reference within the written warranty to any binding non-judicial remedy is prohibited by the rule and the act. So to read the two together, to read the whole paragraph that begins before the paragraph you read, two witnesses were concerned that the rule as written would not allow the use of binding arbitration by the parties after the mechanism had rendered a decision. And then they go on and explain, oh, yes, you can do that. And then they say, others, in the language you suggested, in some cases the warrantor and the consumer might want to agree to use a remedy such as binding arbitration instead of proceeding to mechanism. But the only way to read the two paragraphs so that they are consistent with each other is to take the language that you relied upon and to say that the parties might independently, not in the written warranty where they're forbidden of putting this information, but that they are in some other, either orally or in writing in some other thing, agreeing to the binding arbitration. That's the only way you can read those two provisions together. The way I read it, Your Honor, actually is a little different. It has to be a lot different. You just don't want to read the paragraph before this. No, I don't have a problem reading the paragraph. Reference within the written warranty to any binding non-judicial remedy is prohibited by the rule in the Act. In terms of an informal dispute settlement mechanism. Any binding non-judicial remedy. As a mechanism. I think that paragraph relates solely to a mechanism. And if a mechanism is not adopted in the contract, then there's no reason why the parties... No, because it starts out, two witnesses were concerned that the rule as written would not allow the use of binding arbitration by the parties after the mechanism had rendered a decision. Right. And they're saying, no, no, no, you can do that. After. But, however, reference within the written agreement to any binding non-judicial remedy is prohibited by the rule in the Act. I think the confusion is, and the reason why it's there, is to avoid confusion with binding arbitration as a mechanism, because... That's not what it says. It says after the mechanism. Well... So it expressly prohibits... You have all kinds of arguments about which federal policy takes precedence. I give you that, but I don't think that the regulation can be interpreted the way that the district court did and the way you're trying to do right now. Well... It says that you can have the binding arbitration after the mechanism, but there's nothing here that says you can do it in lieu of, unless it's in the warranty agreement. You can do it some other way, maybe, but not in the warranty agreement. Right, but if there is absolutely no mechanism at all specified in the contract, I don't understand how this language prevents the parties from agreeing on their own to proceed through some other... Oh, I think you can, but you're saying it's separately, not in the warranty. In other words, I thought your position here was in the whole warranty, in the whole agreement, that there was an agreement to binding arbitration. Wrong? There is... You have some separate document that I'm not aware of? It is a separate document. There is the contract, and then separate from the contract, there is the binding arbitration agreement. The binding arbitration, but it wasn't part and parcel of, to sign this contract, you must sign this binding arbitration agreement? Well, it's a separate document. It is by reference incorporated into the contract. However, the consumer has the option to send in written requests, refusing the binding arbitration option. He doesn't want to rent the bed, I guess. At that point, he has the bed, and he writes in and says, I don't want to do binding arbitration, and that's it. It's completely voluntary on the part of the consumer. So this is the argument about whether they did this fast enough. Is that what you're saying? Well, I mean, that is an argument, but, I mean, the fact is they had the option at any time to reject binding arbitration, if they so chose. And, in fact, initially, Mr. Sinead... But you're choosing now, I think, don't you? Certainly, but... Well, you just said any time they choose. Well, but there were certain formalities in the contract that they had to follow, and they didn't do that, namely send in a letter saying that they don't want binding arbitration, which is completely fine. But they never did that. In fact, Mr. Sinead initially brought... I don't think that's an agreement that they did want it, which is what the regulation talks about. Mr. Sinead initially wrote and said he did want to do arbitration. So... But the point is binding arbitration is not an informal settlement dispute mechanism. The contract does not adopt a mechanism. The contract doesn't adopt a mechanism primarily because they don't manufacture anything. Rent-a-Center doesn't make... Is it your position, based on that argument, that the regulation that Judge Motz read in its entirety, that the FTC was without authority to adopt that particular regulation? I mean, if the statute defines it in terms of a mechanism, I mean, is that... I'm not quite sure I understand what your argument is there. Well, I don't think there's a dispute that the FTC had the authority to define the mechanism however it wanted to. But... And it certainly precluded binding arbitration as a mechanism for informal dispute settlements. But... the informal dispute settlement mechanism is completely voluntary, and it doesn't then go on to preclude binding arbitration if and when the mechanism is not adopted by the warrantor. And, in fact, the contract doesn't adopt a mechanism. In no time does it adopt a mechanism. And so its binding arbitration agreement is completely outside the scope of... As far as the... You've got the McMahon test that the Supreme Court's laid out, and then, of course, you've got the Supreme Court's decision in Chevron. Are you contending that you can answer the questions in this case solely on McMahon and you never get to Chevron? Do you have to do the tests in tandem? Does one override the other? I don't think you get to Chevron, or at least not in this case, because the court never questioned the wisdom of the FTC. It adopts and agrees as binding the authority of the FTC in defining what these mechanisms are and how they apply. What the court did was it... When you say the court, what are you talking about? The district court. Well... Okay. I thought the question was going beyond the district court's rationale to what your rationale is. In other words, you bind your... You win or lose with the district court's rationale? Well, I do agree that the district court got it right in that it didn't actually... It basically assumed that the Federal Trade Commission, its authority, it didn't in any way contradict the wisdom of the Federal Trade Commission in its decisions on what binding arbitration is, what a mechanism is. Maybe I can get to it a different way. If we should assume that there is a conflict, we don't abide by the rationale given by the district court, then how do we analyze this? I thought that was the gist of the question. Well, I apologize if I didn't catch that, but I think it has to be cited under a McMahon test. The McMahon test looks to see if there is any specific intent by Congress that forbids binding arbitration. The reason that we use that test to the exclusion of a Chevron test is? Because there's absolutely no indication of any intent by Congress to exclude or prevent the use of binding arbitration. Except that when McMahon was decided, as I remember, federal statutory rights couldn't be arbitrated. Nobody had suggested they would be arbitrated. That's no longer the rule. The Supreme Court has come out differently. There wasn't any reason for McMahon to make any exception for federal statutory rights or to look at the Magnuson-Moss Act. Right. Well, I would argue that because Congress has expressly intended a national preference for binding arbitration, McMahon takes precedent because it looks then to Congress to see if there was any specific intent to block binding arbitration, prevent binding arbitration, and there actually is no specific intent in the Act that would preclude binding arbitration. And outside of the mechanism, there's nothing in the FTC language that prevents binding arbitration if, in fact, the mechanism is not employed. So based on that, I think the McMahon test applies because the only reason why Chevron would apply over McMahon is if there was a question as to the authority of the FTC in its rulemaking. If there was some sort of dispute with the wisdom of the FTC in its rulemaking, then you'd have to look to Chevron as opposed to McMahon. But there is no dispute with the wisdom of the FTC in its rulemaking. So based on that, I think you go back to McMahon and you look to see if there was any specific intent by Congress to preclude binding arbitration, and there isn't, which is why the McMahon test should apply. Thank you very much. Thank you. And you'll give me your authorities within a week. Just file them with the clerk. Thank you. Mr. Whitney, do you have a rebuttal? Yes. I would just like to focus on not binding arbitration in general but the particular binding arbitration agreement in this case and how it's confusing and how it's contrary to Magnuson-Moss. Let's take a look at the provisions concerning attorney's fees, for instance. The ability of a consumer to get an award of attorney's fees is key to the act. But in the arbitration agreement, attorney's fees are mentioned in two paragraphs, paragraph F and G. Neither paragraph is captioned attorney's fees. F talks about arbitration awards greater than $100,000, and it says the consumer is responsible for paying attorney's fees. But then it says with respect to awards under $5,000. Aren't there lots of statutes that contain a provision that permits the award of attorney's fees where the parties can agree to arbitrate and make whatever provision they want? Well, the problem here is that Magnuson-Moss guarantees the right of a consumer to obtain attorney's fees, and this agreement is cutting back on those rights. I know, but I guess my question is that the Magnuson-Moss is not a unique statute in the United States Code in that regard. Correct. But the concept is that, well, arbitration is simply a substitute for litigation. Well, it's not because this particular arbitration agreement is cutting back on those rights to get your statutory fees, and it's actually suggesting that the prevailing party could get attorney's fees when, in fact, that could signal to the consumer, if they read all this verbiage, that even Renner Center possibly could get attorney's fees as a prevailing party when, in fact, Magnuson-Moss limits attorney's fees to consumers. So that's a point of confusion there. That's actually deceptive in this particular arbitration agreement. There's also other provisions concerning initiating arbitration. The process is described in nine single-spaced paragraphs within paragraph F, and this goes to the point of the observation of the FTC in 1975 in saying, you know, we don't believe that we're in a position now to promulgate guidelines for a system where consumers, at the time of purchase, commit to binding arbitration. In fact, they go on to say that they're not convinced that any guidelines could ensure sufficient protection for consumers concerning binding arbitration. Here you have, you know, the legislation is concerned about disclosing information so it's understandable to consumers, and you have a very complex, confusing binding arbitration agreement that the FTC is simply not going to approve. Even something as simple as whether a consumer is going to be bound by the agreement, at the time a contract is signed for the goods, the consumer is bound unless it's rejected by certified mail, postmarked within 15 days after date of agreement, signed by all consumers who signed the agreement, and the consumers must retain the vendor center's acknowledgement of rejection to establish a rejection, rather than simply saying, if you don't want to go with arbitration, just don't sign it. So it's very convoluted and confusing. So for all these reasons, I believe that it's contrary to the Act and would request reversal. Thank you very much. We will come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, G. Steven Agee, Joseph F. Anderson Jr.